IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

WALTON CAMPBELL,　　　　　　　）
　　　　　　　　　　　　　　　　）
　　　Plaintiff,　　　　　　　　）
　　　　　　　　　　　　　　　　）
v.　　　　　　　　　　　　　　　) Civil Action No. 1:17-cv-00568
　　　　　　　　　　　　　　　　）
MARK ESPER,　　　　　　　　　　）
Secretary of the Army　　　　　）
　　　　　　　　　　　　　　　　）
　　　Defendant.　　　　　　　　）

## Memorandum Opinion

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment.

This suit arises out of the 852-day unpaid suspension that Plaintiff Walton Campbell, 57 years-old at the time of the suspension, was placed on by his employer, the Army Corps of Engineer's Engineer Research and Development Center (the "ERDC"). Beginning in 2004, Plaintiff was employed by the ERDC as a physical scientist at the ERDC's Topographic Engineering Center (the "TEC") laboratory in Alexandria, Virginia. Because the TEC laboratory is designated as a restricted area, and because the TEC works almost exclusively with classified information, Plaintiff was required to maintain a Top Secret clearance and access to Sensitive Compartmented Information.

Beginning in February 2005, Plaintiff's direct supervisor, Mr. Harwig, began to receive troubling reports from two of Plaintiff's coworkers, Ms. Kennan and Ms. Hubbard, regarding Plaintiff's behavior. On one instance the two women, both of whom Plaintiff alleges to be less than 40-years-old, described to Mr. Harwig behavior which "sounded to Mr. Harwig like stalking." When Plaintiff's access to a particular part of the TEC facility was removed and his interactions with the two women minimized following this report, Plaintiff complained to his supervisor and others about the coworkers' professionalism and mental stability, making several allegations against the coworkers. Mr. Harwig ultimately concluded that Plaintiff's allegations were unfounded.

Following this, Ms. Kennan reported that she felt unsafe around Plaintiff, and that "Plaintiff had previously commented that he was a person who sought revenge, knew how to make bombs, and that he had put chemicals in a former coworker's drink to give that person diarrhea." Ms. Kennan also alleged that Plaintiff had attempted to follow her home.

Plaintiff was placed under investigation for misconduct, and informed that he should avoid all contact with Ms. Kennan and Ms. Hubbard. Plaintiff alleges that he reported to Mr. Harwig that he felt threatened by Ms. Kennan and Ms. Hubbard due to their apparent false accusations against him, and that he

feared for his safety around Ms. Kennan because she had stated on multiple occasions that she was "a former Marine, a marksman and a good shot." According to Plaintiff, Mr. Harwig dismissed Plaintiff's concerns without investigation.

Soon after this, Plaintiff was detained and interviewed by Fort Belvoir Police for allegedly violating a restraining order that Ms. Kennan had taken out against him. The officers found that Plaintiff was wearing a recording device with a microphone wired through his shirt sleeve, and he was also in possession of a digital voice recorder and camera phone with video capabilities. Plaintiff was then interviewed by the FBI, during which he admitted to wearing the microphone in an attempt to record conversations with his coworkers, and admitted that on a prior occasion he had attempted to record a conversation with his supervisors.

Following these events, Plaintiff's access to classified materials was suspended. TEC Director Mr. Burkhardt made a preliminary decision to place Plaintiff on administrative suspension, without pay, pending the outcome of his security review, but offered Plaintiff an opportunity to rebut the allegations being made against him first. At a meeting on May 19, 2005, between Plaintiff, Burkhardt, and Plaintiff's attorney, Plaintiff did not dispute that he wore a recording device into a restricted facility on two previous occasions,

3

possessed numerous recording devices in a restricted facility, or that he commented about having the ability to make bombs or about how he was a person who took revenge. At that same meeting, Plaintiff's attorney warned Mr. Burkhardt that the Army could face an EEO action if Plaintiff was suspended without pay.

After the May 19 meeting, Mr. Burkhardt officially decided to suspend Plaintiff without pay pending adjudication of his security clearance, determining that retaining Plaintiff in a paid, duty status would be detrimental to national security interests. Mr. Burkhardt made this decision after speaking with Plaintiff's colleagues regarding the situation and reviewing documents pertinent to the allegations. Plaintiff remained on an indefinite, unpaid suspension for 852 days while the investigation was pending, from May 27, 2005, until his clearance was restored on September 26, 2007. In the interim, Plaintiff was found not guilty of the stalking charges after defending himself in a jury trial in Fairfax County. Plaintiff also filed a formal EEO complaint during this time, which ultimately resulted in a decision finding no discrimination on March 9, 2014. Plaintiff appealed the decision to the EEOC's Office of Federal Operations, which affirmed the decision on December 2, 2016.

Plaintiff filed suit on February 28, 2017, alleging that Defendant engaged in unlawful age and sex discrimination in

4

violation of Title VII of the Civil Rights Act and the Age Discrimination in Employment Act (the "ADEA") by placing Plaintiff on unpaid suspension rather than providing paid unclassified work for him during the adjudication of his security clearance. He also alleged retaliation in violation of Title VII and the ADEA due to Defendant's alleged refusal to consider and investigate Plaintiff's claims of age and sex discrimination that Plaintiff made before he was placed on indefinite suspension without pay.

Title VII provides that "[a]ll personnel actions" affecting federal employees like Plaintiff "shall be made free from any discrimination based on . . . sex." 42 U.S.C. § 2000e-16(a). Furthermore, the ADEA provides that "[a]ll personnel actions" affecting employees "who are at least 40 years of age . . . in executive agencies . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). Under either statute, where a plaintiff does not present direct evidence of discrimination, he must prove a violation through the McDonnell Douglas burden-shifting framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, the plaintiff must first establish a *prima facie* case of discrimination or retaliation. Foster v. Univ. of Md. Eastern Shore, 787 F.3d 243, 250 (4th Cir. 2015). The burden then shifts to the employer to produce a legitimate, non-discriminatory reason for the

5

decision. Id. Finally, the plaintiff must establish that the employer's stated reason is merely a pretext. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000).

Here, Plaintiff cannot establish a *prima facie* case of either age or sex discrimination. To demonstrate a *prima facie* case of discrimination, a plaintiff must show that (1) he is a member of a protected class, (2) he suffered an adverse employment action, (3) at the time of the adverse action the plaintiff was performing at a level that met his employer's legitimate expectations, and (4) similarly situated employees outside of the plaintiff's protected class were treated more favorably. See Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010).

Although "plaintiffs are not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim," where a plaintiff relies on comparators to establish his *prima facie* claim, those comparators must be "similar in all relevant respects," including "evidence that the employees dealt with the same supervisor" and "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010).

Plaintiff attempts to identify similarly situated

6

comparators by pointing out that "all other employees whose clearances had not yet been approved, or had been suspended or revoked, had remained in paid duty status and assigned duties that did not require a security clearance." However, of the seventeen other ERDC employees who lost or were denied access to classified information, none are similarly situated. First, the decision maker in Plaintiff's case (Mr. Burkhardt) was not the decision maker in any of the other cases. Second, none of the other seventeen employees had their access to classified information suspended for even remotely similar reasons, and thus did not engage in the "same conduct" as Plaintiff.

Furthermore, even if Plaintiff could establish a *prima facie* claim of disparate treatment, Defendant has provided legitimate, non-discriminatory reasons for the suspension decision, and Plaintiff cannot demonstrate that those reasons were pretextual. Mr. Burkhardt explained in his decision letter that Plaintiff was placed on administrative leave because retaining Plaintiff in paid, duty status posed a danger to national security interests due to the multiple concerns regarding Plaintiff's alleged behavior. These justifications are supported by the evidence, and there is no evidence to show that they are merely pretextual. Thus, Plaintiff's discrimination claim fails as a matter of law.

Plaintiff's retaliation claim also fails as a matter of

7

law. Once again, under the McDonnell Douglas burden-shifting framework, Plaintiff must first establish a *prima facie* case of retaliation. To do so, Plaintiff must show that: (1) he engaged in a protected activity, (2) Defendant took an adverse action against him, and (3) there was a causal link between the protected activity and the adverse action. E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 405-06 (4th Cir. 2005). To prove causation, a plaintiff claiming retaliation must show that reprisal was the "but for" cause of the personnel action. See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2528 (2013) (applying "but for" standard of causation for retaliation claim under Title VII); Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176-77 (2009) (applying same standard for retaliation claim under the ADEA).

Plaintiff cannot prove a *prima facie* case of retaliation because he cannot establish that "but for" a retaliatory motive, he would not have been suspended without pay. Plaintiff's alleged protected activity was his complaint at the May 19, 2005 meeting that he was subjected to disparate treatment and that he would bring an EEO action if Mr. Burkhardt did not retain Plaintiff in a paid position performing non-classified work. However, prior to this meeting, Mr. Burkhardt had already preliminarily determined that he was going to suspend Plaintiff without pay unless Plaintiff satisfactorily rebutted the

8

allegations made against him. Plaintiff did not do so when given the opportunity. Thus, Mr. Burkhardt had already made the decision to suspend Plaintiff before Plaintiff engaged in protected activity, and so Plaintiff cannot show that his protected activity was the "but-for" cause of his suspension.

Furthermore, as discussed *supra*, Defendant has put forward legitimate, non-discriminatory and non-retaliatory justifications for the suspension decision which are supported by the evidence, and Plaintiff has not produced evidence to show that those justifications are pretextual. Therefore, Plaintiff's retaliation claim fails as a matter of law.

For the foregoing reasons, this Court finds that Defendant is entitled to summary judgment. An appropriate order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
April 16, 2018